Good afternoon, Your Honors. My name is Attorney Ryan Cashfin, and I'm here on behalf of the appellant, Cindy Omidi. I'd like to reserve four minutes of my time for rebuttal. This Court must reverse the District Court's judgment for four independent and alternative reasons. The first reason is that the evidence in the jury instructions constructively amended the indictment, thereby violating Cindy Omidi's Fifth Amendment right to an indictment only brought by the grand jury. The second reason is that there's insufficient evidence to uphold the jury's verdict. The third reason is that six heirs at trial, and in their cumulative effect, deprive the appellant a fundamentally fair trial. And those six heirs are the admission of the summary charts, the improper preliminary instructions, and there is no instruction on intent of attempt. Kennedy How did the admission of the summary chart violate his right, your right? Cashfin Yes, Your Honor. Kennedy Because all it is is a summary of the prior evidence, right? Cashfin No, Your Honor, that's not correct. The issue with the summary chart is that it's not merely a summation of the evidence, but it is a typed-up version of the prosecutor's closing arguments. It excludes certain evidence. It doesn't include exculpatory evidence. And principally, the inspector, the postal inspector, Mr. Trackenberg, did his own handwriting analysis of the credit card statements to determine that those credit cards were the same. And that's why it's principally unfair, because Mr. Trackenberg actually put his own independent analysis of what he thought was correct into the chart, which was used to prove that she was guilty, but the chart wasn't a detached summary of the case. It was basically the prosecutor's summation and evidence that Mr. Trackenberg thought was probative of guilt and not necessarily all the evidence in the case. And, Your Honor, there's also insufficient evidence of aiding and abetting, and therefore there shouldn't have been no jury instructions on aiding and abetting, and there was an error to do that, to allow it in? Except didn't that instruction respond to her own theory of defense? Because wasn't she arguing that everything was done by her dead brother, Ken? And the sister testified that her client had accompanied Ken to the post office occasionally, and so wasn't the aiding and abetting really responsive to your own theory? Yes, Your Honor, it was, but the problem was if you accepted the fact that she was just there, there was no independent evidence showing something other than just mere presence. The problem is all we have is an instruction saying that because she was there, that the jury could convict her on aiding and abetting. There was nothing else. Well, what is it about the aiding and abetting instruction that you're objecting to? Is it the formulation of it, or is it the fact that it was given at all? Which is it? The fact that it was given at all, because the problem is if you accept the statement of facts as we put it forward, there is insufficient evidence as a matter of law to find that she aided and abetted her brother. If she was merely there at the post office and her brother was buying the postal money orders before her, that's just mere presence, Your Honor. And this Court and the Supreme Court have indicated that you need something more than just being present at the scene of the crime. For instance, in the Anderson case ---- Well, there was more evidence here, it seems to me. There was evidence about her being the family banker and all kinds of other evidence that would have supported a reasonable inference. I think that, Your Honor, that would just be a piling of inferences upon inferences. It doesn't get you to that situation where you find collusion or aiding and abetting. There's nothing that she affirmatively took a step to help the alleged co-conspirator from committing the crime. She was just there. And just because her name is on the bank account and she benefited, that's not material, Your Honor. Did you object to the instruction? I believe there was an objection, Your Honor. Yes, there was an objection. Yes or no? Yes, Your Honor, there was an objection, yes. And with regard to the exclusion of the principal theory of the defense, which was the loan, the Court erroneously excluded the testimony of one of the defense's witnesses who was a material witness who explained this loan theory with Ken. And that crippled the defense, making it that much fundamentally more unfair to have the trial. And lastly, Your Honor, the jury instructions on the structuring erroneously stated that if there was just one purchase of a money order, that would be sufficient for structuring, which doesn't make sense. You can't just purchase one money order to make it a crime of structuring. Structuring involves a transaction of multiple money orders or, in the case of cash, above, below the limit of $10,000 in the aggregate to actually structure the transaction to avoid the reporting requirement. That's $3,000. Yes, Your Honor. And you objected to that jury instruction? Your Honor, there was a general objection made to any type of jury instruction, and the Court formulated its own instructions. After the Court had formulated its own instructions, there was no, I don't believe there was an objection, Your Honor. Moreover, with regard to the forfeiture order, I know this Court issued its own order and it wanted to know specifically whether the statute 2461 allowed for authority to issue the money judgment order. I believe there's a difference of opinion between the government and I as to what the meaning of the Court's request was. But just addressing what the government said, 2461 cannot be a basis of the authority for the money judgment order because 2461 says pursuant to the Federal Rules of Criminal Procedure, and under 32.2 of the Federal Rules of Criminal Procedure, it says that the Court needs to determine what type of property under the applicable statute. So if we're looking to 2461, which points to 32.2, which points back to the applicable statute, then that's just circular to assume that 2461 is the authority that allows the Court to enter a money judgment order. Does this Court have any questions with regard to the constructive amendment? We advanced two theories as to why the indictment was improperly amended at trial and at the court. The first was that by allowing the jury to convict Mrs. O'Meady on an alternative basis, not set forth in the indictment, it expanded the jurisdictional element of the charge. Specifically, the indictment narrowed the jurisdictional element to the United States Postal Service. And then at trial, over the objection of the defense, the Court instructed the jury that it could convict Mrs. O'Meady not only if they found that she's structured at the United States Postal Service, but another statutory basis of the charge, specifically whether it was merely an issuer or redeemer of cash money or a cashier of money orders. As this Court may know, under 5312, there are 26 different statutory types of financial institutions, and the financial institution is the jurisdictional hook for the indictment. When the Court allowed the jury to convict her on a subset of that charge that was not in the indictment, it altered the jurisdictional basis. And as the Supreme Court made clear in Sterone, altering the jurisdictional basis is a per se constructive amendment. Moreover, that bleeds into the second theory of why there was a constructive amendment. The case is made clear that if the indictment charges a specific set, a specific subset of the statute, altering the indictment to include a different subset that's not charged in the indictment into the jury instruction is also a constructive amendment. So here we have the classic type of constructive amendment where the indictment is narrow and specific. It points to a specific type of financial institution, and then the jury instructions broaden it, and it's not a narrowing, but a broadening to allow a conviction on a charge that was not included in the indictment. With that, I will reserve the rest of my time for rebuttal. Good afternoon, Your Honors. Consuelo Woodhead on behalf of the United States. I'm going to address the issues related to defendant's guilt, and I'm going to reserve five times for my colleague, Mr. Welk, to address the forfeiture issues. With respect to the constructive amendment argument, this is not a case where anyone was convicted of uncharged conduct. This is not the cement steel of Sterone. Defendant was charged with structuring financial transactions at four locations, one of which was the Wilshire Business Center, clearly laid out in the complaint, in the indictment, and that's what the evidence showed she did. Two key features of the record compel the conclusion that there was no constructive amendment here, because the language defendant is now complaining about was effectively surplusage. And those two features are one. The only evidence in the record is that the United States Postal Service was the issuer of the postal money orders sold at the Wilshire Business Center. And that's Deborah Hitzeroth's testimony at pages 528 to 30 of the excerpts of record. She was shown a postal money order and asked who issued it, and she said the USPS. And that was, in fact, a money order from the Wilshire Business Center. Second, defendant's purchase of the money orders at the Wilshire Business Center were financial transactions with the USPS. It's not where the purchase took place. It's who was the financial transaction with that's the critical question here. And when she purchased most postal money orders at the Wilshire Business Center, she was purchasing the identical financial instruments as she purchased at the other three locations. They were issued and backed by the Postal Service. Payment was guaranteed by the Postal Service. Her credit card charges were rung up on a Postal Service credit card machine, and the cash she paid for the postal money orders had to be taken along with all the paperwork to the Postal Service at the end of every day. The Wilshire Business Center didn't even get to keep the cash that she used in these transactions overnight. And the testimony from both Ms. Hisseroth and David Aberbrook from the Wilshire Business Center was that all their finances were the finances of the Postal Service. As a result, there was no complex of facts presented at trial that was relevant, and the crime charge was not substantially altered at trial so that it was impossible to know whether the grand jury would have indicted for the crime actually proved. Let me address the other arguments defendant raised for a moment. With respect to the summary chart, it was a genuine, true 1006 summary of data contained in business records that defendant admitted were admissible and were in fact admitted in evidence. There was no expert opinion in it. It wasn't packaging an expert view. When she complains that there were things that were not there, what she's saying is she would have liked to see a chart that had additional columns that said fingerprints, no, no, no, no, no. Video, no, basically other sources of information. If she had wanted to show that to the jury, that the government didn't have fingerprints, that the government didn't have video, she could have added those columns to that same chart herself. She did not identify a single inaccurate data point within that chart. With respect to the handwriting, the agent was quite clear. He had included in the chart credit card, sorry, credit card receipts, credit card receipts, where Mrs. O'Meady used her own card and receipts where she used her son Julian's card. And he testified, and the government's position all along was the jury should look at those receipts which were in evidence and could determine for itself whether that was her signature or not. He never purported to provide testimony as an expert on that or indeed any other subject. What he did is he compiled information that was in these voluminous documents. And if you look at that Exhibit 53 in the record, you'll see that that's just what it is. With respect to the exclusion of hearsay from defendant's dead brother, first that's subject to plain air review, because the only argument defendant made in the case was that the defendant never argued that it was against a pecuniary interest. And in addition, the there was other evidence to allow her to argue the theory that Ken was the perpetrator. There was evidence about the loan that he had to pay back and so forth. So she was able to make that argument. She definitely was able to make that argument. And she put the loan in and she was able to testify that around the time of the check from Pacific West Dermatology to her, I'm sorry, the check from Pacific West Dermatology to Ken, he had discussed with her getting a loan. But there were no so what was excluded was actually very, very limited. What was excluded was just Ken's statement that he was under pressure from mobile and he needed some money and should he talk to Cindy about it. So the loan they showed wasn't even a loan from Cindy anyway. And none of this evidence actually would have explained why Ken, rather than defendant, would have had any interest in this. Defendant was the one who actually benefited from the structuring of the money orders because she was the one who was then able to deposit on three separate occasions more than $10,000 into a bank account without having to file a CTR. So the limitation was not, there was no exclusion of a defense here. There was a hearsay limitation on very, very narrow grounds that still allowed her to put in the claim that she wanted to. The claims with respect to instructional error are also, well, the one on aiding and abetting is subject to abusive discretion review. But I think what defendant's doing in this case is conflating two things. Conflating the very low standard for giving an instruction with a claim that the evidence was not sufficient. And that's subject to the general rule that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, the verdict stands if the evidence is sufficient with respect to any one of the acts alleged. And in this case, the evidence was more than sufficient to convict her as a principal. I think it, in fact, also was sufficient to convict her as an aider and abetter, particularly on the basis that she counseled, induced or procured the structuring. Because as I said, she was the one who ultimately benefited from the fact that these transactions were structured because they enabled her to engage in further transactions without having to file CTRs. Unless the Court has any questions on the other matters, I'm going to allow Mr. Welk to use the remainder of our time. That will be fine. Thank you. Good afternoon, Your Honors. May it please the Court. Stephen R. Welk for the government. And as Ms. Wood had indicated, I'm here to discuss the forfeiture   case that was finalized in its order of February 20th. This case presents a unique opportunity to clarify an issue of criminal forfeiture law that has, as one district court judge put it a few years ago, has seemed to have been assumed but never quite decided. And that is whether there is, not just whether there is specific statutory authority for criminal money judgments, personal money judgments, under Rule 32.2 of the Federal Rules of Criminal Procedure, but whether 2461, 28 U.S.C., 2461C, specifically provides that authority. The answer is yes. And I guess the next question is why, as is so often the case with why, there's a short, there's probably not a short answer, there is a shortish answer and a longer answer. I'll start with the case of United States v. Newman, which I note two of the members of the panel actually had involvement in that case at the district court and appellate level. The opinion in Newman sort of came right to the threshold of answering this specific question about statutory authority for the entry of personal money judgments without actually deciding it, or at least not explicitly deciding it. The Newman court held first that Rule 32.2 makes clear that where a forfeiture statute authorizes the forfeiture of money, as the statute here does, which is 31 U.S.C., 5317C, the government may seek a money judgment as a form of criminal forfeiture. The court then cited to Section 24, 2461C's explicit incorporation of the Federal Rules of Criminal Forfeiture in Rule 32.2. Finally, the court concluded, the Newman court concluded, and this is a quote, when the government seeks a money judgment, Rule 32 does not permit the court to do anything other than determine the amount of money that the defendant will be ordered to pay, which is specified by statute. That reference at the end, which is specified by statute, is not a violation of Section 24, 2461C. That statute says that all money involved in a structuring violation of which the defendant has been convicted is subject to forfeiture to the United States. So that's, that sentence, the call of Rule 32.2 is for the court to determine how much money in this case, because it's a structuring case, was involved in the underlying offense. And that's what the U.S.C. 5317 describes the scope of the forfeiture for structuring offenses, that is, property involved in the underlying offense. Section 2461C, through its incorporation of Rule 32.2 and the procedures of 21 U.S.C. Section 853, provide the statutory authority for the entry of a personal judgment, a personal money judgment. Now, I indicated that there was a longer answer that I'll, I'll try to address as briefly as I can. And that is, the, the under, the statute that, that allows for forfeiture, the statute that governs forfeiture is procedurally is 21 U.S.C. Section 853. And as in 5317, the provisions of that statute are incorporated into, I think, probably dozens of different forfeiture statutes throughout the U.S. Code. There are two basic ideas in 21 U.S.C. 853. The first is that property that is, depending on the call of the statute, that either represents proceeds of a crime, or is property involved in a crime, is subject to forfeiture to the United States. Now, that, it says the property that is the proceeds of the crime or was involved in the crime. But then you've got Section 853P, which is also incorporated into 5317. And what that stands for is the available, the government is still entitled to forfeit property. And there's showings under 853P that have to be made. The point is, while Section 853 does not explicitly mention money, personal money judgments, and neither does 2461, 2461 by incorporating Rule 32.2, through the incorporation of the Federal rules, brings that within the scope of the statute. And that sort of, that sort of, that sort of serves the purposes that are clearly expressed in 853. That is, that the government should be able to forfeit the value of property where everyone agrees that that property is no longer available. And that's exactly what happened here. This is particularly true in a structuring case, because for the most part, in structuring cases, the money is not available. The actual dollars are not available. And I think one of the things, one of the points I wanted to make about the reply briefly was, there's an argument in the reply, they go into some detail about how the rule here is limited to proceeds. The problem with that argument is they focus their argument on statutes in other cases that aren't applicable here. What they do is they ignore the provision in 5317 that  where everyone agrees that that property is no longer available. Thank you. I don't believe so. Thank you. Mr. Cashman, you have some rebuttal time remaining. Thank you, Your Honor. The first point I'd like to make, it's about the criminal forfeiture statutes in general. As this Court has indicated in Ritchie, the statutes must be construed against the government. So when there's any kind of ambiguity, as I think the government has conceded in this case, because it said that it does not explicitly state that a money judgment is allowed, then it has to be construed against the government. And this would be the perfect case, as Mr. Welk indicated, to clarify that issue. And we also agree with Mr. Welk that 5317 is the governing statute for forfeiture, but if you take a look at that statute, it doesn't allow for personal money judgments. And it's interesting to note that in a related statute, where someone brings in money and doesn't declare it at the airport, that statute's forfeiture provision actually allows for personal money judgments. So the issue here is that the government obtained a money judgment, not a money judgment, against the defendant. And although Mr. Welk now claims that they're going under Section 853P, the substituted assets provision, in their opposition brief, they actually abandoned that issue, and they said that they're only seeking a money judgment, an affirmance on the money judgment basis. Just to step back a bit, the forfeiture statutes allow for three types of forfeitures, the actual property involved in the crime, substituted assets, or in this case, as what the Court did, is it imposed a money judgment, not substituted assets, but money judgment. And it is our contention that 5317, and if you look at the statute, it says nothing about allowing for a personal judgment against the defendant in cases of forfeiture. And it's telling that in another related statute, there is an actual explicit ‑‑ there's an explicit provision that allows for personal money judgments. And as this Court knows, in interpreting statutes, it must give effect to differences that are found within related statutes in this statute. But, counsel, in 2461, refers the reader to the criminal rules of ‑‑ the rules of criminal procedure. In Rule 32.2, B1A talks about personal money judgment so why is nothing in this case? Because, Your Honor, that's circular logic. If you look at 32.2, it says as soon as practical after the verdict, the Court must make a determination of what property is subject to forfeiture under the applicable statute. If you're considering 2461 to be the applicable statute, which refers back to 32.2, then you're just in a circular loop. Well, I'm saying you would look to ‑‑ first, they have to be convicted of something. Yes, Your Honor. All right. So they're convicted in this case of structuring. Yes, Your Honor. Structuring says, the structuring statute says there's forfeiture. Your Honor, the structuring statute is 5317, which says in imposing a sentence for a violation, the Court shall order the defendant to forfeit all property real or involved, real or personal, involved in the offense and any property traceable to. It says nothing about a money judgment. Right. But it also doesn't say you can't seek a money judgment. I mean, a money judgment is what ‑‑ Rule 32.2 says if you can't find these things, you can substitute a money judgment for that. No, Your Honor. The ‑‑ as we argued in the moving papers, it incorporates the procedures of 853. 853 has two components. It has the actual forfeiture statute for drug‑related offenses where it says that all proceeds of criminal activity needs to be forfeited, and it has a substituted assets provision, which is not here in this ‑‑ in section 5317. So 5317 incorporates the procedures, not the substantive provisions. Just so I understand your reading of the statute, then, take this case. Again, I understand you're claiming your client was not guilty. But assuming someone else who was clearly guilty has structured these transactions and is walking out of the post office with a bag full of the money orders, and they're arrested right there, I take it you're saying in that situation the government could forfeit the bag of the money orders, right? Yes, Your Honor. But if they take that bag of money orders and they give it to someone else, we know exactly how much money it is, and that person speeds away, we never see that bag of money orders again, the government's just out of luck in that case? Well, Your Honor, the reason why that this case ‑‑ these types of crimes do not allow for personal money judgments or any type of forfeiture of substitute assets is because there's no requirement that there's underlying criminal activity. So someone who's structuring money orders for innocuous reasons or some kind of business purpose would be caught up in this crime. The reason why they haven't put that type of personal money judgment that we see in other statutes is because it's not ‑‑ there's no conclusive evidence that that was criminal money. It wasn't proceeds of a crime. But to get back to my example, if you catch the person with the bag full of the money orders, you said they could forfeit that. Yes. So what's the difference of whether they catch the guy with the bag or they don't? The underlying criminal activity is the same. Well, Your Honor, it's the statutory ‑‑ it's what the Congress intended to be forfeited. And the reason why they did this is I think is you can ‑‑ you can understand it based on the related statutes which have certain exceptions for in cases of money laundering where the person doesn't retain all the proceeds of the actual money that was laundered, there's an exception that you don't have to forfeit all the money. And we noted that in the moving papers. And what I want to impress upon this Court is that we're talking about forfeiture. That's taking away property from someone. And the Supreme Court in this Court has made very clear that the statutory provisions have to be explicit. And I do think that we have a concession on the record that it's not explicit that there can be personal money judgments. And with that, my time is up. I will submit, Your Honors. Thank you, counsel. The case just argued is submitted. We appreciate the arguments from all of you. And we are adjourned for this afternoon.
judges: Graber, Owens, Mahan